UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 11-CR-850 |
| WAYNE HILL, | ) | |
| Defendant. | ) | Judge Sharon Johnson Coleman |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Wayne Hill ("Hill") is charged with robbing a bank in violation of 18 U.S.C. § 2113 (a) and (d). Hill admits that on November 26, 2011 he entered the Horseshoe Casino in Hammond, Indiana in order to launder money. Hill was approached and briefly questioned by Horseshoe Casino security personnel including Eugene Kasper ("Kasper") and Monaye Perry ("Perry"), as well as by Hammond Police Lieutenant Patrick McKechnie ("Lt. McKechnie"). Hill was subsequently led to an interview room where he was further questioned and his bag searched. Hill moves to suppress statements following, what he claims was, an arrest without probable cause and a warrantless seizure by Hammond police officers. Additionally, Hill moves to exclude evidence of the items retrieved from his bag as products of an illegal search. For the following reasons, this Court finds Lt. McKechnie had reasonable suspicion to first subject Hill to a *Terry* stop and later had probable cause to arrest him after questioning. Therefore, Hill's motions are denied.

**Background**

On November 26, 2011, Hill entered the Horseshoe Casino with a backpack and Santa hat containing thousands of dollars of red-dyed money. Hill admits that he went to the casino to launder money. Hill sat at a slot machine and exchanged red-dyed bills for cash vouchers which he could then redeem for clean bills at the casino's cash out machines. Perry, a casino security officer, responded to a call over the security radio concerning suspicious activity where Hill was seated at the slot machines. Upon arrival near the slot machines, Perry observed a fellow security officer, Danny Faulkner ("Faulkner"), along with a slot attendant speaking with Hill. Hill had informed casino personnel that one of his bills was stuck in the slot machine.

While the slot attendant attempted to retrieve the bill and opened the machine, Faulkner informed Perry that the slot attendant had observed Hill feeding large amounts of red-dyed bills into slot machines in exchange for vouchers without playing. The security officers stood within five feet of

1

Hill, the slot attendant, and the slot machine. Perry spoke briefly with Hill and testified that he seemed hesitant, nervous, and short with his answers. After speaking with Hill, Perry contacted her shift manager Kasper by radio and informed him that a supervisor or shift manager was needed near the slot machines. Perry left Hill at the slot machines and testified further that she met up with Kasper and Lt. McKechnie to inform them of the situation. During this same time Hill had left the slot machines and made his way to the "cash out area" of the casino.

Lt. McKechnie and Kasper approached Hill as he stood in line at the cash out area. Other casino security personnel, including Perry, also came to the cash out area, but remained a few feet away from Hill, Lt. McKechnie, and Kasper. Lt. McKechnie questioned Hill about why his money was stained and where the money had come from. Hill did not answer the first question and told Lt. McKechnie that he found the money while changing a tire near a lake.

Although Hill admitted at the suppression hearing that he brought red-dyed bills to the casino to exchange them, the testimonies of the witnesses differ as to how those bills were first observed by police authority. Lt. McKechnie testified that he observed red-dyed bills in Hill's hands as he walked up to him. Lt. McKechnie testified that based on his experience he knew that bank employees, when possible, would place dye packs into bags from bank robberies to identify the currency as stolen. Lt. McKechnie testified further that after approaching Hill, Kasper, a casino security supervisor, took the bills from Hill's hands to analyze. In direct contradiction, Hill testified that he had no cash in his hands when approached by Lt. McKechnie and Kasper. Hill testified that he had placed the majority of the red-dyed cash inside a Santa hat and then secured the hat within the bag sealed shut by a drawstring and a flap so that no one could see the large amounts of money. Hill testified further that Lt. McKechnie bumped into his bag causing it to fall on the floor and that it was at that time Kasper seized and illegally searched his bag in order to obtain the red-dyed bills.

Over the Government's objection, defense counsel admitted an incident report written by Kasper documenting his interactions with Hill.[1] Kasper's report states that four stacks of fifty dollar bills fell out of Hill's bag. Video surveillance submitted at the hearing clearly demonstrates that Kasper held a stack of bills secured by a bank band in his hands and inspected the bills in front of Hill, Lt. McKechnie, Perry, and several other security personnel in the cash out area. A one minute gap in the video footage prevents video corroboration of how Kasper got the money in his hands to examine. The video footage also shows that when Hill was led away by McKechnie for further questioning, the

---
[1] The Government informed the Court that Kasper was not called as a witness because he was out of town despite this matter being set on the Court's calendar for several months.

bag and Santa hat containing the bulk of the money remained in Hill's possession. The video footage demonstrates that Hill was escorted by several casino security personnel and Lt. McKechnie from the cash out area to an interview room. In the interview room Hill was questioned further and his bag was searched.

Hill moves to suppress statements made at the cash out area and in the interview room arguing that: 1) the officers lacked probable cause to arrest him since he did not have any red-dyed bills in his hands and 2) his bag was illegally searched and seized. This Court notes that because the Government stated in its closing that it will not introduce any of Hill's statements made in the interview room of the casino, the only statements at issue in this motion are Hill's statements made at the cash out area prior to being led to the interview room. Hill also moves to dismiss all evidence retrieved from his bag, which according to Hill's testimony of what happened at the cash out area would constitute a second search of his bag in the interview room.

**Legal Standard**

Not all personal interactions between police officers and citizens constitute impermissible seizures in violation of the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). Police officers may detain individuals without probable cause for certain investigatory purposes. An investigatory stop is a brief, non-intrusive detention and an officer need only have specific and articulable facts sufficient to give rise to a reasonable suspicion that a person has committed or is committing a crime. *United States v. McCarthur*, 6 F.3d 1270, 1275 (7th Cir. 1993). Whether an officer had a reasonable suspicion is based upon the totality of the circumstances and common-sensical judgments and inferences about human behavior. *Jewett v. Anders*, 521 F.3d 818, 823-25 (7th Cir. 2008).

An arrest, however, requires probable cause. Probable cause requires that an arresting officer "possess knowledge from reasonably trustworthy information that would lead a prudent person to believe that a suspect has committed a crime." *United States v. McCauley*, 659 F.3d 645, 649 (7th Cir. 2011) (internal quotations omitted). A person is considered to be under arrest, when under the relevant circumstances a reasonable person would not have believed he was free to leave. *Adams v. Szczerbinski*, 329 Fed. Appx. 19, 24 (7th Cir. 2009). "A reasonable person might not believe he was free to leave when faced with the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Deluna v. City of Rockford*, 447 F.3d 1008, 1014 (7th Cir. 2006) (internal citations omitted).

**Discussion**

The parties disagree about whether the encounter between Lt. McKechnie and Hill on the casino floor was consensual, an investigatory stop, or an arrest. The resolution of a motion to suppress is a fact-intensive inquiry in which the district court must make credibility determinations based on its opportunity to hear the testimony and observe the demeanor of the witnesses at the suppression hearing. *United States v. Kempf*, 400 F.3d 501, 503 (7th Cir. 2005). This Court focuses on three particular moments during Hill's casino visit: 1) the initial interaction between Hill, Faulkner, Perry, and the slot attendant; 2) the encounter at the cash out area between Hill, Lt. McKechnie, and casino security personnel; and 3) the moment Hill was led from the cash out area to the interview room for further questioning. Hill states that he was under arrest from the moment Lt. McKechnie approached and began questioning him at the cash out area. The Government contends that this initial encounter was consensual or at most a valid *Terry* stop and that after questioning Hill, Lt. McKechnie had probable cause to arrest him and lead him to the interview room.

1. *Terry Stop*

Lt. McKechnie only needed a reasonable suspicion to stop and question Hill during Hill's second encounter with casino personnel at the cash out area. Hill states that even if this encounter is considered a *Terry* stop, Lt. McKechnie lacked sufficient specific and articulable facts to give rise to a reasonable suspicion that Hill had committed or was committing a crime.

After considering the testimony of the witnesses, assessing their credibility, and reviewing submitted surveillance footage, this Court finds that Lt. McKechnie's initial encounter with Hill was an investigatory stop based on information derived from Perry and Faulkner from their slot machine interaction with Hill. Although Hill contends that Lt. McKechnie relied solely on an anonymous source in questioning him, the record demonstrates that Lt. McKechnie's decision to approach Hill was based on a series of events and contemporaneous interactions between Hill and casino personnel. First, Faulkner approached Hill at the slot machine and brought a slot machine attendant to assist Hill with a bill stuck in the machine. The slot attendant had direct interaction with not only Hill, but a red-dyed bill that she retrieved from the machine. The slot attendant informed Faulkner of the red-dyed currency and upon Perry's arrival at the slot machine, Faulkner informed Perry of what the slot attendant had seen. Perry then questioned Hill and noted that he seemed nervous, hesitant, and that he was short with his responses. Perry then contacted Kasper who arrived on the casino floor with Lt. McKechnie. Contrary to Hill's testimony, there was a series of contemporaneous events and interactions between Hill and casino personnel, that when taken as a whole, establish reasonable suspicion.

Hill's testimony in contradiction is immediately called to question when he admits that he was committing a felony at the time of the incident (money laundering) and given the fact that he has previously been convicted of bank robbery. This Court takes note of inconsistencies in Hill's testimony in light of his tainted credibility. Most importantly, this Court focuses on Hill's incredulous testimony that Kasper opened his securely sealed bag, saw thousands of dollars of red-dyed bills, and then returned the bag and the bulk of the suspicious money to Hill. This Court also notes that although there were some inconsistencies between McKechnie's testimony and Kasper's incident report, this Court finds Perry and McKechnie more credible as disinterested witnesses. Perry testified that she did not see anyone bend down to pick anything up off the floor and McKechnie testified that the money analyzed by Kasper was in Hill's hands as Kasper and Lt. McKechnie approached him.

Even if this Court were to find Hill's testimony credible, Hill fails to demonstrate that Lt. McKechnie somehow violated his Fourth Amendment rights at the cash out area. While Hill alleges that Lt. McKechnie knocked his bag on the floor, he clearly testified to the fact that the bag was still sealed shut when on the ground and that, according to Hill, Kasper picked the bag up, opened it, and retrieved red-dyed currency. The Fourth Amendment only applies to government action. *United States v. Aldridge*, 642 F.3d 537, 541 (7th Cir. 2011). While a private party's search or seizure may run afoul of the Fourth Amendment if there is a sufficiently close nexus between the state and the private conduct so that the action may be fairly treated as that of the State itself, *Thomas v. Sheahan*, 370 F. Supp. 2d 704, 713 (N.D. Ill. 2005), in this case there is no evidence in the record that such a nexus existed. Moreover, it was casino policy to subject patrons to random searches, whether Hill was aware of such a policy or not. Perry testified that there were signs throughout the casino informing patrons that they were being recorded and subject to random searches.

Therefore, in light of the totality of circumstances, Lt. McKechnie had sufficient facts to give rise to a reasonable suspicion to perform an investigatory stop based on information obtained by casino security personnel and his own personal interactions with Hill.

*2. Arrest*

After questioning Hill at the cash out area and viewing the red-dyed money, Lt. McKechnie had sufficient probable cause to effectuate an arrest. Notwithstanding the parties' disputes about the prior interactions, both parties concede that at the very least Hill was under arrest when brought into the interview room. Having held that Lt. McKechnie had probable cause to effectuate an arrest, any evidence retrieved in the search of Hill's bag and Santa hat in the interview room is admissible as a search made incident to an arrest.

Accordingly, this Court using common-sensical judgments and inferences, finds Hill's testimony improbable given inconsistencies in his testimony, his lack of credibility, and the fact that Hill himself argues that a casino security employee and not Lt. McKechnie searched his bag at the cash out area of the casino. This Court finds that any statements made by Hill at the cash out area are admissible at trial. This Court need not address the admissibility of statements made in the interview room as the Government has made clear that no such statements will be admitted at trial. Additionally, all evidence seized from the search of Hill's bag in the interview room is admissible as a search incident to an arrest.

**Conclusion**

For the foregoing reasons, Defendant's motions to suppress are all denied.

IT IS SO ORDERED.

Date: June 28, 2013

_____
Sharon Johnson Coleman
United States District Judge